(No. 58659.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. GARY G. ROLFINGSMEYER, Appellee.

*Opinion filed February 1, 1984.—Rehearing denied March 30, 1984.*

SIMON, J., specially concurring.

Neil F. Hartigan, Attorney General, of Springfield, and Phillip McQuillan, State's Attorney, of Carlyle (Michael B. Weinstein, Assistant Attorney General, of Chicago, and Stephen E. Norris and Raymond F. Buckley, Jr., of the State's Attorneys Appellate Service Commission, of Mt. Vernon, of counsel), for the People.

R. Edward Veltman, Jr., of Crain, Cooksey, Veltman & Pursell, Ltd., of Centralia (Michael E. Reed, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

On November 14, 1982, defendant, Gary Rolfingsmeyer, was arrested and charged with driving under the influence of alcohol (Ill. Rev. Stat., 1982 Supp., ch. 95½,

par. 11—501(a)(2)). At the police station, the "Implied Consent Warning" (Ill. Rev. Stat., 1982 Supp., ch. 95½, par. 11—501.1(c)), which warns a driver that a refusal to submit to a so-called breath test will result in a six-month suspension of his motor vehicle driver's license, was read to him. The police officer then asked him to take the test, and he refused.

On December 8, 1982, the defendant filed a motion attacking the constitutionality of sections 11—501.1 and 11—501.2(c) of the Illinois Vehicle Code (Ill. Rev. Stat., 1982 Supp., ch. 95½, par. 11—501.1; Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.2(c)). Previously section 11—501.1 had provided a driver with the right to consult an attorney prior to deciding whether to take a breath test (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.1(a)(3)), but this provision had been eliminated from the section (Ill. Rev. Stat., 1982 Supp., ch. 95½, par. 11—501.1(a)). Section 11—501.2(c) provides that evidence of a defendant's refusal to submit to a breath test "shall be admissible" at the defendant's civil or criminal trial. Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.2(c).

On December 13, 1982, the circuit court of Clinton County entered a judgment captioned "Order Striking Certain Portion of Ch. 95½, par. 11—501.2(c)." The order read:

> "This cause coming on to be heard, the Court strikes the words 'or criminal action' from Chapter 95½ Section 11—501.2(c) finding that portion unconstitutional."

It did not state the ground of unconstitutionality. A direct appeal was taken by the People under Supreme Court Rule 302(a) (87 Ill. 2d R. 302(a)).

Our State, as most States have done, has adopted an "implied consent" statute to assist in determining whether motor vehicle drivers suspected of intoxication are in fact under the influence of alcohol. Section 11—501.1 of the Illinois Vehicle Code, in the part pertinent here, provides:

"(a) Any person who drives or is in actual physical control of a motor vehicle upon the public highways of this State shall be deemed to have given consent, subject to the provisions of Section 11—501.2, to a chemical test or tests of blood, breath, or urine for the purpose of determining the alcohol, other drug, or combination thereof content of such person's blood if arrested, as evidenced by the issuance of a Uniform Traffic Ticket, for any offense as defined in Section 11—501 or a similar provision of a local ordinance. ***" (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.1(a).)

Section 11—501.2(c) further provides:

"(c) If a person under arrest refuses to submit to a chemical test under the provisions of Section 11—501.1, evidence of refusal shall be admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person under the influence of alcohol, or other drugs, or combination of both was driving or in actual physical control of a motor vehicle." (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.2(c).)

The defendant states that the trial court's judgment was correct because (1) section 501.2(c) is contrary to the separation-of-powers provision of the Constitution of Illinois and (2) the section violates an accused's privilege against self-incrimination under the constitutions of the United States and Illinois.

Section 11—501.2(c) offends the separation-of-powers clause of our constitution because, the defendant contends, the legislature improperly invaded the judicial authority by providing that evidence of a refusal of a breath test shall be admitted at a trial. This contention fails, for it is clear that "the legislature of a State has the power to prescribe new and alter existing rules of evidence or to prescribe methods of proof." (*People v. Wells* (1942), 380 Ill. 347, 354. See also *People v. Youngbey* (1980), 82 Ill. 2d 556, 560; *People v. Buford* (1982), 110 Ill. App. 3d 46, 53.) Examples of this are section 115—5 of the Code of Criminal

Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 115—5 (business records)), section 115—5.1 of that code (Ill. Rev. Stat. 1981, ch. 38, par. 115—5.1 (coroner's records)), section 115—7 of that code (Ill. Rev. Stat. 1981, ch. 38, par. 115—7 (evidence of rape victims' prior sexual conduct)), and section 8—1901 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 8—1901 (evidence of defendant's payment of plaintiff's medical expenses)).

Section 11—501.2(c) of the Illinois Vehicle Code simply provides that an accused's refusal to submit to a breath test shall be admissible as evidence at his trial, and it is not violative of the separation-of-powers clause.

The second contention of the defendant is that section 11—501.2(c) violates his privilege against self-incrimination under article I, section 10, of the Constitution of Illinois. The defendant maintains that he has the right to remain silent, and that the statute allows the State to use his silence against him.

The defendant misstates the question involved. The Supreme Court addressed what the question is in *South Dakota v. Neville* (1983), 459 U.S. 553, 74 L. Ed. 2d 748, 103 S. Ct. 916. There, the court considered an implied-consent statute very similar to our statute. The court, in upholding the legislation, relied upon its decision in *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826. There the court declared constitutional the use of a State-compelled blood test to detect alcohol, holding that a blood test was physical evidence and not communicative evidence that could violate an accused's right to remain silent. The court in *Neville* held that, under *Schmerber*, a driver has no constitutional right to refuse a breath test, and the State could have compelled drivers to submit to the test. The court held that because a driver has no right to refuse, evidence of his conduct in refusing can properly be admitted at his trial.

*Neville* is applicable here. Section 11—501.2(c) simply

provides a statutory consequence of a driver's refusal to agree to a breath test. The Supreme Court has pointed out that the right to remain silent does not mean that a driver has a right to refuse a breath test. Consequently, evidence of a refusal is not constitutionally protected. The court in *Neville* observed, too, that the basis of an implied-consent statute is that by using the public highways, the scene of millions of deaths and injuries, a driver has implicitly consented for reasons of public safety to submit to a breath test. Section 11—501.2(c) does not offend the fifth amendment.

Nor does it offend our own constitution. There is nothing in the proceedings of the constitutional convention to indicate an intention to provide, in article I, section 10, protections against self-incrimination broader than those of the Constitution of the United States. (See 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1376-80.) The record of proceedings reflects a general recognition and acceptance of interpretations by the United States Supreme Court. There had been proposals to alter the language of the section that were "designed primarily to have the language of the self-incrimination clause perhaps reflect the substance of some court decisions on this subject," but the bill of rights committee, speaking through Delegate Bernard Weisberg, decided that "whichever phrasing were to be put into *** section 10, that the existing state of the law would remain unchanged." 3 Proceedings 1376-77.

We need not consider the additional claim of the defendant that he had a right to be advised by the police that he had a right to consult with an attorney on whether he should take the test. That question is, of course, outside the scope of the trial court's judgment and is not before us. The trial court held simply that section 11—501.2(c), which concerns only the admissibility of a defendant's refusal to submit to a breath test, was unconstitutional. In

any event, the defendant refused to take the test, and it is difficult to ascertain the pertinency here of the right-to-counsel question.

For the reasons given, the judgment of the circuit court of Clinton County is reversed, and the cause is remanded to that court for further proceedings.

*Reversed and remanded.*

JUSTICE SIMON, specially concurring:

Although I agree with the court's conclusion as well as with much of what is said in the majority opinion, I do not agree with the majority's statement that in interpreting the self-incrimination clause contained in article I, section 10, of our State Constitution, we are bound to automatically follow the decisions of the United States Supreme Court interpreting the comparable provision contained in the fifth amendment of the Federal Constitution. As justices of the highest court of the State of Illinois we take an oath of office to faithfully uphold the provisions of the State Constitution. We cannot delegate that duty to anyone—not to the legislature, nor the Governor, nor to any Federal court.

The majority assumes that a guarantee in the bill of rights of our State Constitution has the same content as the comparable guarantee in the Federal Constitution unless there is some indication to the contrary in the proceedings of the constitutional convention. This presumption is the reverse of the correct one and inverts the proper relationship between the State and Federal constitutions. The bill of rights in article I of the Illinois Constitution is the basic guarantee to our citizens of their civil liberties. Until the ratification of the fourteenth amendment in 1868, our citizens had very few *Federal* rights that were enforceable against their State government. The due process clause of that amendment only requires that the States recognize basic civil liberties that are "implicit in the concept of or-

dered liberty" (*Palko v. Connecticut* (1937), 302 U.S. 319, 325, 82 L. Ed. 288, 292, 58 S. Ct. 149, 152) and "which lie at the base of all our civil and political institutions" (*Hebert v. Louisiana* (1926), 272 U.S. 312, 316, 71 L. Ed. 270, 273, 47 S. Ct. 103, 104). Although the United States Supreme Court has by now held that most of the guarantees in the Federal Bill of Rights apply to the States through the due process clause, in some instances considerations of federalism—which do not influence us—may counsel that court to delay before adopting a novel interpretation of the Constitution which will broadly expand the individual liberties guaranteed by the Federal government. (*Cf. McCray v. New York* (1983), 461 U.S. 961, 77 L. Ed. 2d 1322, 103 S. Ct. 2438 (opinion of Stevens, J., joined by Blackmun and Powell, JJ., on denial of *certiorari*).) "It is one of the happy incidents of the federal system that a single courageous State may *** serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country." *New State Ice Co. v. Liebmann* (1932), 285 U.S. 262, 311, 76 L. Ed. 747, 771, 52 S. Ct. 371, 386-87 (Brandeis and Stone, JJ., dissenting).

There is no evidence in the record of proceedings of the Illinois constitutional convention to indicate that the framers of article I, section 10, intended to limit the content of the self-incrimination clause to the precedents of the United States Supreme Court. In adopting nearly the same language as the broadly worded guarantee of article II, section 10, of the 1870 Constitution and in rejecting attempts to revise this language in order to codify certain precedents, the convention implicitly endorsed the open-ended balancing process traditionally used by courts to give content to the broad language of the constitutional guarantees contained in the bill of rights. In a closely related context, Delegate Elmer Gertz, chairman of the bill of rights committee of the sixth Illinois constitutional convention, explicitly embraced this proposition:

"We don't have closed minds here. We are simply trying to resolve these knotty problems; and in an area where, when you take the specific language of the Federal Bill of Rights or our bill of rights or any other bill of rights, the language seems to say something, and then the cases interpret sometimes beyond the language in interpreting the community mores and a growing sense of what constitutes justice—what constitutes due process of law—*that's the process that's going on, and it isn't going to stop with our proceedings.* Unfortunately, there are sometimes half-way times when you recognize that something has to be done, and you are not quite sure what ought to be done. Whenever we weren't quite sure what ought to be done, we refrained from doing anything." (Emphasis added.) (3 Record of Proceedings, Sixth Illinois Constitutional Convention 1379.)

Delegate Bernard Weisberg's declaration that, under any of the proposed alternative drafts of article I, section 10, "the existing state of the law would remain unchanged" is consistent with the views expressed by Delegate Gertz. (3 Proceedings 1377.) His statement indicates that the framers did not intend to overrule any particular court decisions in this area, but, as I read his statement, at the same time it did not reject further development of the law by this court or by the Supreme Court of the United States.

In fulfilling our obligation to interpret and apply the Illinois Constitution we are obliged to broadly balance the basic principles contained in that document, and in doing so we are not limited by precedents of the United States Supreme Court. (See *Cooper v. California* (1967), 386 U.S. 58, 62, 17 L. Ed. 2d 730, 734, 87 S. Ct. 788, 791; see also *State v. Neville* (S.D. Mar. 14, 1984), No. 13260; Brennan, *State Constitutions and the Protection of Individual Rights*, 90 Harv. L. Rev. 489 (1977).) Of course, when we believe that a decision of that court "achieves a fair balance between [the relevant] competing objectives" (*People v. Smith* (1983), 95 Ill. 2d 412, 422), we may choose to fol-

low it. However, when a majority of the United States Supreme Court has adopted an interpretation of the Bill of Rights that we believe is insufficiently ample to effectively implement those guarantees, we are not frozen by it in interpreting the comparable provisions of our State Constitution. See, *e.g., People v. Exline* (1983), 98 Ill. 2d 150, 157 (Goldenhersh and Simon, JJ., dissenting) (*Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, does not state the law under the Illinois Constitution); *People v. Wheeler* (1978), 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890 (*Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, does not state the law under the California Constitution); *People v. Sporleder* (Colo. 1983), 666 P.2d 135 (*Smith v. Maryland* (1979), 442 U.S. 735, 61 L. Ed. 2d 220, 99 S. Ct. 2577, does not state the law under the Colorado Constitution); *People v. Langen* (N.Y. 1983), 34 Crim. L. Rptr. 2142 (*United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157, does not state the law under the New York Constitution).

Professor Paul Kauper, then of the University of Michigan, put it this way to the delegates to our constitutional convention:

> "[A] state supreme court is free to give the freedoms recognized in the state constitution a reach that transcends interpretations given the fundamental rights by the United States Supreme Court. A state is free to develop its own higher standards." P. Kauper, *The State Constitution: Its Nature and Purpose,* in Con-Con: Issues for the Illinois Constitutional Convention 23-24 (S. Gove & V. Ranney eds. 1970).

Because the language of the self-incrimination clause in the Illinois Constitution is almost identical to the comparable clause in the Federal Constitution, it does not follow it must have the same content. The similar language in the two constitutions indicates that the intention was to protect the same interests; consequently in many instances as

in this case, but not in all cases, it can be expected that both constitutions will be interpreted in the same way. Nevertheless, what five United States Supreme Court justices decide is only a binding interpretation of the Federal Constitution. It is the nature of the Federal system that we, as the justices of the Illinois Supreme Court, are sovereign in our own sphere; in construing the State Constitution we must answer to our own consciences and rely upon our own wisdom and insights. "If we would guide by the light of reason, we must let our minds be bold." *New State Ice Co. v. Liebmann* (1931), 285 U.S. 262, 311, 76 L. Ed. 747, 771, 52 S. Ct. 371, 387 (Brandeis and Stone, JJ., dissenting).