THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CALVIN WINFIELD, Defendant-Appellant.

First District (2nd Division) No. 85—3737

Opinion filed September 8, 1987.

James J. Doherty, Public Defender, of Chicago (Linda J. Seeley,

Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., James F. Fitzgerald, and Michelle Katz, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Defendant-appellant Calvin Winfield was charged with eight counts of criminal sexual assault, four counts of aggravated criminal sexual assault, six counts of aggravated criminal sexual abuse, and one count of unlawful restraint arising from the alleged sexual molestation of his six-year-old daughter, C.B. After a bench trial, the judge found Winfield guilty of three counts of aggravated criminal sexual abuse, a Class 2 felony, but acquitted him of the remaining 16 counts of the indictment. The three counts were merged into one, and Winfield was sentenced to five years' imprisonment thereon.

On appeal, Winfield presents the following issues for review: (1) whether the trial judge rendered legally inconsistent verdicts; (2) whether the statute under which the trial court received C.B.'s preliminary hearing testimony as substantive evidence was constitutional; (3) whether the trial court erred when it allowed the hearsay testimony of a nurse who treated C.B. approximately 24 hours after the alleged attack; (4) whether Winfield was proved guilty beyond a reasonable doubt; (5) whether Winfield's right to counsel was violated when the trial court denied his motion for a continuance to substitute counsel; and (6) whether the State failed to prove an element of the offense, *i.e.*, that Winfield was over 17 years old. We affirm.

After being qualified as a witness, C.B., a seven-year-old at the time of trial, testified that she had lived in a one-bedroom apartment with Winfield, her mother, and her sister. There were two beds, and she and her sister slept separately from their parents. C.B. related at trial that on April 1, 1985, she watched T.V. for some time before going to bed, and that nothing happened that night. She asserted that her testimony at the preliminary hearing that Winfield sexually attacked her was nothing but lies. C.B. claimed she got the idea to fabricate this story from "Star," a friend of hers in California.

Over a defense objection, the State was permitted to read into the record as substantive evidence C.B.'s preliminary hearing testimony, which she had given on April 4, 1985. C.B. had testified at that time that on April 1, while her sister and mother slept, Winfield ordered her to join him in his bed, but told her to be quiet so as to

not wake the others. C.B. recalled that she initially stayed in her own bed and observed Winfield take the blanket off himself. At this point, he asked her, "[Y]ou want to do nothing?" to which she replied, "I don't know if I want to do it or not." She then went to his bed as directed and told him that she "was scared to do it." Winfield told her that she did not have to be scared, and he proceeded to remove his underpants. He instructed C.B. to remove her underpants as well, and she complied. According to the account she gave at the preliminary hearing, C.B. then laid down on her back while Winfield put his "D" in her "poo-poo," and she saw "white stuff" come out of his "D" and get on her thighs and legs.

Debra Conti was employed as a nurse at South Chicago Hospital. Over defense objections, she testified that at approximately 5:30 p.m. of the day after the alleged incident, C.B.'s mother brought the child to the emergency room for the purpose of treatment for sexual abuse. C.B. told Conti at this time that Winfield had "touched her with his 'D' '" the previous night, and she pointed to her vaginal and chest areas. Conti asked C.B. if she had gotten any "white stuff" on her body, and she replied that she had some on her legs and vaginal area. The results of a subsequent physical examination of C.B. showed an absence of spermatozoa. Moreover, C.B.'s hymen was intact, her body was not bruised in any way, and her vagina showed no indications of physical trauma. However, Conti testified that C.B. had bathed and urinated before arriving at the hospital.

C.B. and Nurse Conti were the only witnesses at the trial. After considering their testimony, the judge found Winfield guilty of only the three counts of criminal sexual abuse delineated in counts 7, 8, and 17, specifically stating that the State failed to prove the element of "penetration" alleged in the counts on which he was found not guilty. Counts 8 and 17 were merged with count 7, and Winfield was sentenced to five years' incarceration based on the charge presented therein.

The trial judge also declared that he believed that C.B. recanted her preliminary hearing testimony "as a result of influence from both the mother and father." Winfield's counsel did not object to or request that the judge explain the basis for his finding of parental coercion. Furthermore, at the sentencing hearing, the judge stated:

> "I will add this for the record too. That after having this hearing in evidence on the matter, I believed the evidence that was submitted by way of the preliminary hearing transcript as to the victim's prior testimony, and from my personal observations in this court of the conduct of the defendant and the vic-

tim's mother, I believe that the victim was intimidated and coerced to repudiate and refute the testimony that she had given in the preliminary hearing. So, I believed the preliminary hearing; I did not believe what she testified to in the court room because of those factors of personal observation in this court room."

The defendant also failed to object to these remarks.

I

Legally inconsistent verdicts have been defined as follows:

"Verdicts of guilty of crime A but not guilty of crime B, where both crimes arise out of the same set of facts, are legally inconsistent when they necessarily involve the conclusion that the same essential element or elements of each crime were found both to exist and not to exist." (*People v. Murray* (1975), 34 Ill. App. 3d 521, 531, 340 N.E.2d 186.)

Contrary to Winfield's assertion, however, a legally inconsistent verdict in a bench trial is not reversible error *per se*. Rather, this court has held:

"Inconsistency is only one element to consider in determining the existence of proof beyond a reasonable doubt. When, as in the present case, there is a rational explanation for the inconsistent finding other than confusion, the inconsistency will not contribute to a determination that defendant was not proved guilty beyond a reasonable doubt." (*People v. O'Malley* (1982), 108 Ill. App. 3d 823, 833, 439 N.E.2d 998.)

With these standards in mind, we may now consider the substance of Winfield's contention.

He first contends that his acquittal on count 4 was inconsistent with his conviction on counts 7 and 8. These counts read as follows:

Count 4 (not guilty).

"Calvin Winfield committed the offense of criminal sexual assault in that he committed an act of *sexual penetration*, to wit: *sexual intercourse* with [C.B.] who was under 18 years of age when the act was committed and Calvin Winfield was a family member, to wit: father, in violation of chapter 38, section 12—13—A(3) ***." (Emphasis added.)

Count 7 (guilty).

"Calvin Winfield committed the offense of aggravated criminal sexual abuse in that he committed an act of *sexual conduct*, to wit: *sexual intercourse* with [C.B.], who was under 18 years of age when the act was committed, and Calvin

Winfield was a family member, to wit: her father, in violation of chapter 38, section 12—16(B) \*\*\*." (Emphasis added.)

Count 8 (guilty).

"Calvin Winfield committed the offense of aggravated criminal sexual abuse in that he, a person over 17 years of age, committed an act of *sexual conduct*, to wit: *sexual intercourse* with [C.B.], a person under 13 years of age, in violation of chapter 38, section 12—16(c)(1) \*\*\*." (Emphasis added.)

According to Winfield, these verdicts are inconsistent because by finding him not guilty on count 4, the trial judge implicitly made a factual determination that the State did not prove beyond a reasonable doubt that he had "sexual intercourse" with C.B., and since counts 7 and 8 charge that same fact, the convictions on those counts must be reversed.

Winfield also asserts that the finding of guilty on count 16 was inconsistent with innocence on count 17. These counts stated:

Count 16 (not guilty).

"Calvin Winfield committed the offense of aggravated criminal sexual abuse in that he committed an act of *sexual penetration*, to wit: Calvin Winfield *placed his penis on the sex organ* of [C.B.], who was under 18 years of age when the act was committed, and Calvin Winfield was a family member, to wit: her father, in violation of chapter 38, section 12—16—B \*\*\*." (Emphasis added.)

Count 17 (guilty).

"Calvin Winfield committed the offense of aggravated criminal sexual abuse in that he, a person over 17 years of age, committed an act of *sexual conduct*, to wit: Calvin Winfield *placed his penis on the sex organ* of [C.B.], a person under the age 13 years of age, in violation of chapter 38, section 12—16—C(1) \*\*\*." (Emphasis added.)

Winfield contends that by finding him not guilty on count 16, the judge implicitly found that the State did not prove beyond a reasonable doubt that Winfield "placed his penis on the sex organ" of C.B., and since count 17 charges that same fact, the guilt verdict on that count must also be reversed.

In contrast, the State maintains that the phrases in the various counts of the indictment which Winfield claims resulted in inconsistencies were not "essential elements" under the applicable charging statutes, and that therefore such language is mere surplusage which

does not in any way affect the validity of the trial court's rulings. Our supreme court has stated:

> "The rule is well established that every material allegation in the indictment must be proved beyond a reasonable doubt before the defendant can be legally convicted. [Citation.] It is also clear, we think, that an immaterial allegation need not be so proved. An averment is material when it is essential to the crime or cause of action and cannot be stricken from the indictment or complaint without leaving it insufficient." (*People v. Taranto* (1954), 2 Ill. 2d 476, 482, 119 N.E.2d 221.)

The State emphasizes that there was an obvious difference between the counts of which Winfield was found guilty and those of which he was deemed innocent, that distinction being that the "not guilty" counts alleged "sexual penetration," whereas the guilty counts allege "sexual conduct." As noted earlier, the judge specifically found that the failure of the State to prove the element of penetration was the basis for the not guilty verdicts.

Sexual penetration is decidedly different from sexual conduct under the Illinois Criminal Code. Sexual penetration is defined as

> "any contact, however slight, between the sex organ of one person and the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration. Evidence of emission of semen is not required to prove sexual penetration." (Ill. Rev. Stat. 1985, ch. 38, par. 12—12(f).)

Sexual conduct, on the other hand, is

> "any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused, or any part of the body of a child under 13 years of age, for the purpose of sexual gratification or arousal of the victim or the accused." (Ill. Rev. Stat. 1985, ch. 38, par. 12—12(e).)

In contrast, neither "sexual intercourse" nor "placed his penis on the sex organ" is statutorily defined; indeed, these phrases cannot be found anywhere in the Illinois Criminal Code.

■ The fact that the General Assembly has not seen fit to define these terms lends support to the State's contention that these phrases are not essential elements of the charged offenses. In the case at bar, if the portions of the counts alleging "to wit: sexual intercourse" or "to wit: placing his penis on the sex organ" are

stricken, the remaining language would still have clearly stated the requisite statutory elements. The allegations of "sexual intercourse" and "placing his penis on the sex organ," therefore, are immaterial to the charge, and hence are mere surplusage. Consequently, it is abundantly clear that the use of those phrases does not mean that the judge rendered inconsistent verdicts.

■ In any event, even if we were to determine that the trial judge rendered legally inconsistent verdicts, we do not believe that it would constitute reversible error. The court's decision plainly was not due to confusion, but rather was based on the fact that the State had failed to prove penetration. Under these circumstances, we do not perceive any reversible error.

## II

■ Prior inconsistent statements are generally admissible as substantive evidence pursuant to section 115—10.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1), which reads as follows:

"Admissibility of Prior Inconsistent Statements.

In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—

(1) was made under oath at a trial, hearing, or other proceeding, or

(2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and

(A) the statement is proved to have been written or signed by the witness, or

(B) the witness acknowledged under oath the making of the statement either in his testimony at the hearing or trial in which the admission into evidence of the prior statement is being sought, or at a trial, hearing, or other proceeding, or

(C) the statement is proved to have been accurately recorded * * *.

Nothing in this section shall render a prior inconsistent statement inadmissible for purposes of impeachment because such statement was not recorded or otherwise fails to meet

the criteria set forth herein."

Accordingly, C.B.'s preliminary hearing testimony incontestably satisfied the statutory requirements since it conflicted with her trial testimony, she was subject to cross-examination on her prior statements, and the prior statements were made under oath.

Indeed, Winfield does not claim that C.B.'s preliminary hearing testimony is somehow statutorily deficient. Instead, he contends that the substantive use of prior inconsistent statements under section 115—10.1 is unconstitutional as a violation of the doctrine of separation of powers since this provision allegedly conflicts with Supreme Court Rule 238 (87 Ill. 2d R. 238), allowing the use of prior inconsistent statements for impeachment purposes.

Supreme Court Rule 238 (87 Ill. 2d 238) reads as follows:

> "238. Impeachment of Witnesses; Hostile Witnesses
>
> (a) The credibility of a witness may be attacked by any party, including the party calling him.
>
> (b) If the court determines that a witness is hostile or unwilling, he may be examined by the party calling him as if under cross-examination."

Under Rule 238, a prior inconsistent statement is admissible to impeach the trial testimony, but not as substantive evidence. According to the Historical and Practice Notes following Rule 238:

> "Rule 238 as now written affords some protection against the witness who at trial repudiates his earlier statements. The [1982] amendment did not, however, change the rule that the earlier statement could only be introduced for the light it shed on the witness' credibility, and not for the purpose of proving the truth of the material contained in the statement. [Citations]. In 1984 the General Assembly changed this rule in criminal cases [citation] as to certain kinds of statements by adding section 115—10.1 to the Code of Criminal Procedure of 1963 [citation]." (Ill. Ann. Stat., ch. 110A, par. 238, Historical and Practice Notes, at 522 (Smith-Hurd 1986).)

The commentary patently indicates that Rule 238 does not permit substantive use of prior inconsistent statements, but that section 115—10.1 has changed that rule to allow substantive use of such statements under certain circumstances in criminal cases.

According to Winfield, the legislature exceeded its authority by changing the rules adopted by the supreme court governing the admissibility of hearsay evidence, thus infringing upon judicial prerogatives and offending the separation of powers clause of the State Constitution. Winfield cites well-established law that when a statute

conflicts with a supreme court rule promulgated pursuant to constitutional authority, the rule prevails and the statute is void. *People v. Joseph* (1986), 113 Ill. 2d 36, 41, 495 N.E.2d 501; *People v. Jackson* (1977), 69 Ill. 2d 252, 255, 371 N.E.2d 602.

The separation of powers clause of the Illinois Constitution provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art. 11, sec. 1.) Our supreme court has held that this provision does not contemplate "rigidly separated compartments." (*People v. Joseph* (1986), 113 Ill. 2d 36, 41, 495 N.E.2d 501; *Sanelli v. Glenview State Bank* (1985), 108 Ill. 2d 1, 20, 483 N.E.2d 226.) However, if a "power is judicial in character, the legislature is expressly prohibited from exercising it." (*People v. Joseph* (1986), 113 Ill. 2d 36, 41, 495 N.E.2d 501; *People v. Jackson* (1977), 69 Ill. 2d 252, 256, 371 N.E.2d 602.) Judicial power is defined as "the power which adjudicates upon the rights of citizens and to that end construes and applies the law" (*People v. Joseph* (1986), 113 Ill. 2d 36, 41, 495 N.E.2d 501; *People v. Hawkinson* (1927), 324 Ill. 285, 287, 155 N.E. 318), and it includes the "inherent authority to prescribe and institute rules of procedure" (*People v. Joseph* (1986), 113 Ill. 2d 36, 41, 495 N.E.2d 501; *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149, 105 N.E.2d 713). On the other hand, the supreme court has held that "when [the supreme court] has not acted in an area into which it is arguable that the 'judicial power' extends, section 16 of article VI (Ill. Const. 1970, art. VI, sec. 16) [granting the supreme court supervisory and administrative power over the courts] does not purport to exclude the legislature from acting in any way which may have a *peripheral* effect on judicial administration." (Emphasis in original.) *People v. Joseph* (1986), 113 Ill. 2d 36, 43, 495 N.E.2d 501.

One area which the supreme court has deemed peripheral to judicial administration is the legislative enactment of rules of evidence. (*People v. Rolfingsmeyer* (1984), 101 Ill. 2d 137, 461 N.E.2d 410.) In *Rolfingsmeyer*, the court considered the constitutionality of a statute rendering evidence of a refusal to take a breath test admissible in a trial on the charge of driving under the influence. The defendant there argued, as Winfield does here, that the provision violated the separation of powers doctrine because it allegedly "invaded the judicial authority." (101 Ill. 2d 137, 140, 461 N.E.2d 410.) The court, however, rejected this argument, finding that "the legislature of a State has the power to prescribe new and later existing rules of evidence or to prescribe methods of proof." (101 Ill. 2d 137, 140, 461 N.E.2d 410, citing *People v. Wells* (1942), 380 Ill. 347, 354, 44

N.E.2d 32.) Accordingly, the legislation regarding the admissibility of evidence of a refusal to take a sobriety test was held constitutional.

██ The State persuasively argues that 115—10.1 is also constitutional. We initially note that "a strong presumption of constitutionality attaches to any legislative enactment and that the burden rests upon the challenger to demonstrate its invalidity." (*People v. Joseph* (1986), 113 Ill. 2d 36, 41, 495 N.E.2d 501; *Sanelli v. Glenview State Bank* (1985), 108 Ill. 2d 1, 20, 483 N.E.2d 226.) In light of this standard, we do not perceive the existence of any conflict between Rule 238 and section 115—10.1 which would render the latter unconstitutional. Section 115—10.1 is a rule of evidence governing the substantive use of prior inconsistent statements in criminal cases, an area of law in which the supreme court has not exercised judicial power. In contrast, Rule 238 states the rule with regard to the use of such statements for impeachment purposes. We agree with the State that Rule 238 retains its own unique purpose, and is not subsumed into the new statute. We therefore hold that there is no separation of powers violation here.

In addition, we note that our courts have looked with favor upon section 115—10.1, though, admittedly, the constitutionality of the provision was not raised by the parties at the time. (*People v. King* (1986), 109 Ill. 2d 514, 488 N.E.2d 949; *People v. Wilson* (1986), 149 Ill. App. 3d 1075, 501 N.E.2d 863.) In *King*, the defendant was convicted of murder and armed robbery. A defense witness took the stand and stated that he had lied before the grand jury when he implicated the defendant. An assistant State's Attorney then testified that the witness had reaffirmed the truth of his grand jury testimony shortly before trial. The defendant objected to this testimony, claiming that it was improper impeachment. The court disagreed, holding that impeachment was proper. In an *obiter dictum*, the court observed that the witness' prior inconsistent statements made under oath were admissible in any event as substantive evidence under section 115—10.1. *People v. King* (1986), 109 Ill. 2d 514, 530, 488 N.E.2d 949.

██ This court also had the opportunity to consider the significance of section 115—10.1 in *Wilson*, a case in which the victim's trial testimony directly contradicted her preliminary hearing testimony. The court held that the victim's initial statement was properly admissible under section 115—10.1 as substantive evidence, stating:

> "The clear benefit of being able to use a prior inconsistent statement as substantive evidence is that it places such testimony on equal footing with the trial testimony, thus making it

more persuasive in the eyes of the trier of fact. Moreover, once a prior statement of a complaining witness is admitted as substantive evidence, a defendant can use that statement more extensively during closing argument to emphasize to the jury that the record expressly negates an element of the offense." (*People v. Wilson* (1986), 149 Ill. App. 3d 1075, 1079, 495 N.E.2d 501.) The court concluded that defense counsel's failure to know of the new statute allowing the substantive use of prior inconsistent statements constituted ineffective assistance of counsel, thus adding a special resonance, in our view, to the constitutionality of the provision.

For the foregoing reasons, we hold that section 115—10.1 is constitutional. Accordingly, there was no error in allowing C.B.'s prior inconsistent preliminary hearing testimony to be admitted as substantive evidence.

### III

■ Winfield next contends that his convictions should be reversed because the trial court allowed Nurse Conti to testify to what C.B. told her approximately 24 hours after the incident. The State, however, convincingly argues that Conti's testimony was admissible under the exception to the hearsay rule for statements made for the purpose of medical treatment and diagnosis. Our supreme court has held that statements of a presently existing bodily condition made by a patient to a doctor consulted for the purpose of treatment are admissible as substantive proof as an exception to the hearsay rule. (*People v. Gant* (1974), 58 Ill. 2d 178, 186, 317 N.E.2d 564.) Though Illinois courts have not decided whether testimony by nurses should come within this exception, we have previously recognized that "the child's welfare is best served by a liberal interpretation of the treating physician *** exception to the hearsay rule in order to provide the fullest record possible concerning the alleged abuse." (*In re Marriage of Theis* (1984), 121 Ill. App. 3d 1092, 1099, 460 N.E.2d 912.) Construing the exception liberally, we are led inescapably to the conclusion that Nurse Conti's testimony was appropriately held by the trial court to be admissible.

■■ There is considerable authority to support our conclusion. For example, the Federal courts allow nurses to testify to statements made during treatment pursuant to Federal Rule of Evidence 803(4). Thus, in *Ellis v. International Playtex, Inc.* (4th Cir. 1984), 745 F.2d 292, 303, the court stated:

"A patient afflicted with a serious disease *** has a strong incentive to speak candidly with his doctor. Indeed, it is this practical consideration that forms the basis of the hearsay exception for statements made to a *nurse* or doctor concerning medical history, treatment, and diagnosis." (*Emphasis added.*)

In addition, Cleary & Graham state:

"If made for purposes of medical diagnosis or treatment, the [hearsay] statement may be addressed to anyone thought to be associated with providing such services, including a physician, *nurse*, or ambulance attendant." (Emphasis added.) (E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 803.8 (4th ed. 1984).)

An excerpt from McCormick is also instructive:

"The statement need not have been made to a physician; one made to a hospital attendant, ambulance driver, or member of the family may qualify." (McCormick, Evidence sec. 292, at 840 (3d ed. 1984).)

Accordingly, we hold that Nurse Conti's testimony was admissible as coming within the exception to the hearsay rule for statements made for the purpose of medical treatment and diagnosis.

## IV

Winfield's next issue is that he was not proved guilty beyond a reasonable doubt. In support of this contention, he emphasizes that C.B. made two totally inconsistent statements under oath. He also points out that the subsequent medical examination showed no physical evidence of sexual abuse. In addition, Winfield complains that the judge's determination of guilt was based on evidence not presented at trial, namely that C.B.'s recanting of her preliminary hearing testimony was due to the intimidation and coercion of her parents.

The State, however, convincingly argues that there was sufficient evidence to enable the trial court to find rationally that Winfield was guilty beyond a reasonable doubt. The judge, as the trier of fact, could, with justification, find that C.B.'s preliminary hearing testimony was credible and amply corroborated by Nurse Conti's equally believable recitation of events. Moreover, merely because the physical evidence did not indicate that she had been sexually abused does not in and of itself warrant reversal, especially in light of the fact that Conti testified that C.B. had bathed and urinated before coming to the hospital. In any event, the judge specifically found that the State failed to prove penetration, a ruling which was entirely consistent

with the physical evidence.

As to Winfield's argument that the judge based his decision on evidence not presented at trial, namely that he believed C.B. retracted her preliminary hearing testimony due to pressure from her parents, we note that Winfield failed to object to the remarks at the time they were made, did not raise them as error in his post-trial motion, and does not on appeal argue that the judge's statements constitute plain error. Under such circumstances, we are constrained to find that Winfield has waived the right to argue that such statements were error. *People v. Hoskins* (1984), 101 Ill. 2d 209, 219, 461 N.E.2d 941; *People v. Baynes* (1981), 88 Ill. 2d 225, 231, 430 N.E.2d 1070; see also R. Ruebner, Illinois Criminal Procedure 419-27 (1st ed. 1987).

Therefore, we hold that Winfield was indeed proved guilty beyond a reasonable doubt.

## VI

Winfield next asserts that the trial judge's refusal to grant him a continuance in order to retain counsel of his own choosing warrants a reversal of his conviction. The record indicates that Winfield requested the continuance on October 16, 1985, the day the trial was to commence. Prior to that occasion, the judge had granted Winfield 10 continuances, which resulted in delaying the trial date from May 31, 1985, until October 16. During this delay Winfield was out on bail, and never complained about the quality of the representation he was receiving from the public defender's office.

The State maintains that Winfield was not entitled to another continuance, and that therefore the court properly denied the motion. We quite agree. The law is clear that the right to choose one's counsel must be balanced against the "equally desirable public need for the efficient and effective administration of criminal justice." (*People v. Aloian* (1982), 105 Ill. App. 3d 694, 697, 434 N.E.2d 768.) Our supreme court has noted that "the right to counsel of a defendant's own choosing may not be employed as a weapon to indefinitely thwart the administration of justice or to otherwise embarrass the effective prosecution of crime." (*People v. Myles* (1981), 86 Ill. 2d 260, 268, 427 N.E.2d 59.) It is also well established that "[a]bsent a showing of good cause, it is within the discretion of the trial court to deny a request for substitute counsel." (*People v. Gornick* (1982), 107 Ill. App. 3d 505, 510, 437 N.E.2d 892.) Moreover, unless the defendant can make a showing that the trial judge abused his discretion in denying such a motion, the decision will not be dis-

turbed on appeal. *People v. Aloian* (1982), 105 Ill. App. 3d 694, 697, 434 N.E.2d 768.

 We believe it is abundantly clear that the trial judge acted properly in denying Winfield's motion for a continuance to substitute counsel. The request was not made until the day of trial, and no objection or dissatisfaction was expressed prior to that time. Winfield also utterly failed to make any showing of good cause as to why a change of counsel was necessary. Under these circumstances, Winfield's motion must be considered merely as a dilatory tactic to further impede the effective administration of justice. We discern no abuse of discretion on the part of the judge in proceeding to trial.

## V

 Winfield's final argument is that his conviction must be reversed because the State did not prove an element of the offense, namely, that Winfield was over 17 years old, as alleged in count 8. We can summarily dismiss this contention in light of the fact that our courts have clearly held in cases of this nature that the accused has the burden of proving that he is below the minimum age required by statute. (*In re Williams* (1974), 24 Ill. App. 3d 593, 598, 321 N.E.2d 412; *People v. Kutella* (1971), 132 Ill. App. 2d 248, 249, 269 N.E.2d 111.) For example, in *Kutella*, the defendant claimed as error the fact that he was not proved to be of age 14 or upward, as the relevant rape statute required. (Ill. Rev. Stat. 1967, ch. 38, pars. 11—1(a), 11—3(a).) The court rejected this argument, holding that the "defendant has the burden of proving that he is under age and the State does not have to allege or prove that fact." (*People v. Kutella* (1971), 132 Ill. App. 2d 248, 249, 269 N.E.2d 111.) We believe the circumstances herein call for the same result.

For the above stated reasons, the judgment of the trial court is affirmed.

Affirmed.

HARTMAN and BILANDIC, JJ., concur.