THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. XAVIER YOUNG, Defendant-Appellant.

First District (1st Division)   No. 86—66

Opinion filed May 16, 1988.

Steven Clark and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry and Anthony J. Carballo, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Following a severed bench trial, defendant, Xavier Young, and co-defendants, Jimmie Buford and Alfred Dismukes, were found guilty of murder, armed robbery and unlawful restraint. (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1, 18—2, 10—3.) Defendant was sentenced to concurrent prison terms of 20 years, 15 years and 3 years, respectively. This appeal brought by defendant Young is predicated on section 115—10.1

of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par 115—10.1), which allows the prior inconsistent statement of a witness to be admitted as substantive evidence against defendant when specific criteria are met. In the present case, the trial court allowed the prior inconsistent statement of codefendant Buford, who testified on defendant's behalf, to be admitted as substantive evidence against defendant. On appeal, defendant contends that: (1) section 115—10.1 violates the Illinois constitutional doctrine of separation of powers by invading the exclusive province of the judiciary and conflicting with Supreme Court Rule 238 (107 Ill. 2d R. 238); and (2) use of Buford's prior inconsistent statement as substantive evidence of defendant's guilt violated defendant's right to due process and to a fair trial. For the following reasons, we affirm the judgment of the trial court.

The record sets forth the following. David Burns, occurrence witness who testified on behalf of the State, stated that on Saturday, October 27, 1984, he was working a 9 a.m. to 7 p.m. shift at Winfield Groceries, located at the corner of Cullerton and Keeler in Chicago. Winfield Johnson, elderly store owner, and William Wright were also working at the store that day. Burns described the store layout as consisting of a deep freezer and checkout counter on the left side of the front door, an ice-cream freezer and two pop coolers on the right side, and a meat counter at the back of the store. In the middle were several aisles of stocked shelves.

Approximately 7 p.m., Johnson was at the checkout counter, Burns was putting pop in one of the coolers and Wright was in the washroom, when defendant entered the store and told Burns that he wanted to purchase some meat. After Burns called Wright out of the washroom to wait on defendant, Wright and defendant then went to the meat counter in the rear of the store and Burns started to stock the ice-cream freezer in the front. Shortly after 7 p.m., Buford and Dismukes entered the store. Buford walked to the middle aisle and Dismukes stood in line behind a customer at the checkout counter. When the customer left, Buford ran to the front door and locked it. Dismukes then pulled out his gun and announced a stickup. Buford, armed with a small black pistol, ran around the checkout counter to where Johnson was standing and ordered him to open the cash register. Johnson refused to do so.

Meanwhile, Dismukes told Burns to lie on the floor. Burns then lay down on his stomach, facing the front of the store, from which position he could see Buford. At that point, Buford pushed Johnson to the middle aisle and down onto his stomach. Burns then heard John-

son say, "Oh, no," and heard a shot. After the shot, Dismukes ordered Burns to open the cash register. As Burns walked toward the checkout counter, he saw Johnson lying on the floor and Buford going through his belongings.

Once Burns opened the cash register, Dismukes took the food stamps and cash. As Buford and Dismukes were getting ready to leave, Buford called out, "Hey, come on," and defendant came running from the rear of the store. After Buford, Dismukes and defendant left the store together, Burns watched them run east on Cullerton and then cross the street. Burns further stated that defendant had remained in the rear of the store throughout the robbery and shooting. Approximately five weeks later, Burns identified defendant in a lineup.

Detective James Antonacci of the Chicago police department testified that he arrested codefendant Buford on December 3, 1984, after Burns had tentatively identified him from a photo array. At the time of his arrest, Buford stated that he had no knowledge of the incident and denied his participation. However, after the lineup in which Burns identified him, Buford changed his position and gave the following statement: the robbery had been the idea of an employee at Winfield Groceries nicknamed "Kewanee," who had discussed the idea with Buford and defendant, explaining that Johnson was an old man who usually carried about $300 in cash on him, plus had money in the cash register and under the register drawer. Kewanee advised Buford and defendant that the best time to rob the store would be on a Saturday, approximately 7 p.m.

Buford further stated that on Saturday, October 27, 1984, he left his house, armed with a .22 caliber gun and a .38 caliber gun and went to a nearby park where he met defendant and Curtis Williams. Dismukes later joined them and asked to participate in the robbery. Buford gave Dismukes the .22 caliber gun to use. Curtis Williams, Dismukes, Buford and defendant then drove to Winfield Groceries in Williams' car. Dismukes, Buford and defendant got out of the car and entered the store. Dismukes went to the back of the store, while defendant and Buford remained in the front, pretending to shop. When the last customer left, Buford closed the door and ran over to Johnson, grabbed him with one hand, and took him to the middle aisle, where he pushed him to the floor. When Johnson started to struggle, Buford shot him.

Buford claimed that defendant and Dismukes were at the cash register while he was struggling with Johnson. The three then left, got into Williams' car and drove away. Buford signed and initialled his

post-arrest statement, and Detective Antonacci witnessed the signature.

Subsequently, on December 4, 1984, defendant was placed under arrest. Initially, he told the police that he did not know anything about a robbery or murder. However, when informed that he had been implicated in Johnson's murder, defendant stated that a couple days before the robbery, he had been talking with a group of people when Kewanee came over to the group and suggested robbing the grocery store on a Saturday, approximately 7 p.m. On the day of the robbery, defendant had been at his house most of the day. Around 5 p.m., Buford and Dismukes came over with several others. Later, defendant, Buford and Dismukes drove to Winfield Groceries, where all three got out of the car. Defendant entered the store first, followed shortly thereafter by Buford and Dismukes. Defendant saw Buford grab Johnson and heard a shot. All three left the store together and got into a waiting vehicle. Defendant signed his statement and Detective Antonacci witnessed his signature.

At trial, defendant altered his version of the incident and stated that when he, Dismukes and Buford stopped at Winfield Groceries, defendant's only intention was to purchase some lunch meat. He had no idea that the others had entered the store or that they were planning a robbery. While at the back of the store, defendant heard someone say, "This is a stick up." Not knowing who it was, defendant remained in the back of the store. He then heard scuffling and a shot. Then, someone called him and he ran to the front of the store and got into the car. Defendant claimed that he was extremely scared at the time and feared for his safety. When asked why he had admitted to planning the robbery when questioned by the police, defendant stated that he had done so because the police had read Buford's and Curtis' statements to him. He then signed the statement because the police told him that it would be best if he did so.

Following defendant's testimony, all defendants rested their cases and closing arguments ensued, following which the court called a recess in order to deliberate on its decision. When trial resumed, the court indicated it had reached its decision regarding defendant, Buford and Dismukes. However, before the court announced the verdicts, counsel for Buford requested a sidebar. Counsel then informed the court and other counsel that during recess, Buford had informed his counsel that he wanted the court to know that defendant had not knowingly or willingly participated in the robbery. After extensive discussion regarding the request, counsel for defendant moved to reopen defendant's case so as to allow Buford to testify on defendant's be-

half. Prior to granting the request, the court entered its guilty verdicts as to Buford and Dismukes.

Buford then testified on defendant's behalf that prior to October 27, 1984, he had never discussed any plans to rob Winfield Groceries in defendant's presence; he had never told defendant that he was going to rob the store; and he had never planned with defendant to rob the store. Buford explained that on October 27, 1984, while he was at defendant's house, he suggested that he, defendant, Dismukes, and Williams go for a ride in Williams' car. When they stopped at Winfield Groceries, defendant and Dismukes got out of the car and went into the store first. Then Buford went in. While inside, he never saw or conversed with defendant.

On cross-examination, Buford identified his signature on the December 4, 1984 statement given at police headquarters, but denied having made the statement. He claimed he signed the statement because the police had told him to do so. When the State requested that Buford's prior inconsistent statement be introduced as substantive evidence pursuant to section 115—10.1, defense counsel objected, arguing that section 115—10.1 was unconstitutional.

The trial court held that there was no confrontation clause violation because declarant had been in court and had been subject to cross-examination. The court then entered its verdict finding defendant guilty of all charges. In so finding, the court stated that Burns' testimony, defendant's statement, the assistant State's Attorney's statement and Buford's statement proved beyond a reasonable doubt that defendant had planned to rob the grocery store. The court added that although defendant may not have intended that there be a shooting and he became afraid when one occurred, it was too late at that point to avoid responsibility and accountability.

Thereafter, post-trial motions were denied and, following a hearing in aggravation and mitigation, the court sentenced defendant to concurrent prison terms of 20 years for murder, 15 years for armed robbery, and three years for unlawful restraint. Defendant's timely appeal followed.

Defendant first contends that section 115—10.1 violates the Illinois constitutional doctrine of separation of powers by encroaching upon an exclusive judicial function and by conflicting with Supreme Court Rule 238.

Section 115—10.1 states:

"In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the

hearing or trial, and

    (b) the witness is subject to cross-examination concerning the statement, and

    (c) the statement—

        (1) was made under oath at a trial, hearing, or other proceeding, or

        (2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and

            (A) the statement is proved to have been written or signed by the witness, or

            (B) the witness acknowledged under oath the making of the statement either in his testimony at the hearing or trial in which the admission into evidence of the prior statement is being sought, or at a trial, hearing, or other proceeding, or

            (C) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording.

Nothing in this Section shall render a prior inconsistent statement inadmissible for purposes of impeachment because such statement was not recorded or otherwise fails to meet the criteria set forth herein." Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1.

Defendant agrees that Buford's prior statement falls within the criteria of section 115—10.1, but argues that the statement should not have been admitted as substantive evidence because section 115—10.1 is in violation of the separation of powers clause of the Illinois Constitution. Specifically, defendant contends that by enacting section 115—10.1, the legislature usurped the judiciary's functions to determine whether the quality of evidence is reliable or trustworthy enough to be admissible in legal proceedings and to determine the weight to be given evidence. In response, the State argues that in enacting section 115—10.1, the legislature properly acted within its recognized scope of authority to enact rules of evidence.

■■■ Preliminarily, we note that a strong presumption of constitutionality attaches to any legislative enactment and the burden is on the challenger to demonstrate the enactment's invalidity. (*People v. Joseph* (1986), 113 Ill. 2d 36, 495 N.E.2d 501.) We first address defendant's contention that section 115—10.1 violates the separation of powers clause of the Illinois Constitution, which provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art.

II, §1.) Although this provision does not contemplate a rigid separation of the branches (*People v. Joseph*, 113 Ill. 2d 36, 495 N.E.2d), if the power is judicial in character, the legislature is expressly prohibited from exercising it. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) Judicial power has been defined as "the power which adjudicates upon the rights of citizens and to that end construes and applies the law." *People v. Hawkinson* (1927), 324 Ill. 285, 287, 155 N.E. 318.

As an exception to this prohibition, however, the supreme court has specifically held that the legislature has the power to promulgate new and to alter existing rules of evidence or to prescribe methods of proof. (*People v. Rolfingsmeyer* (1984), 101 Ill. 2d 137, 461 N.E.2d 410.) In *Rolfingsmeyer*, the court held that a statute was constitutional which permitted evidence of a defendant's refusal to take a breath test to be admitted at trial. In reaching its decision, the court cited similar rules of evidence or methods of proof which have been enacted by the legislature, including: section 115—5 of the Code of Criminal Procedure of 1963 (the Code) (business records); section 115—5.1 of the Code (coroner's records); section 115—7 of the Code (evidence of rape victim's prior sexual conduct); and section 8—1901 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 8—1901) (evidence of defendant's payment of plaintiff's medical expenses). Regarding section 115—10.1, it simply provides that the prior inconsistent statement of a witness is admissible at trial provided specific criteria are satisfied. As such, we conclude that it is a rule of evidence which does not act to violate the separation-of-powers clause.

With respect to defendant's contention that section 115—10.1 is void because it conflicts with Supreme Court Rule 238, we find *People v. Winfield* (1987), 160 Ill. App. 3d 983, 513 N.E.2d 1032, and *People v. Hastings* (1987), 161 Ill. App. 3d 714, 515 N.E.2d 260, dispositive of the issue. Supreme Court Rule 238 states:

"238. Impeachment of Witnesses; Hostile Witnesses

(a) The credibility of a witness may be attacked by any party, including the party calling him.

(b) If the court determines that a witness is hostile or unwilling, he may be examined by the party calling him as if under cross-examination." (107 Ill. 2d R. 238.)

As noted by the *Winfield* court, the commentary to Rule 238 expressly acknowledges that section 115—10.1 allows substantive use of prior inconsistent statements under certain circumstances in criminal cases. In reaching its determination as to the constitutionality of section 115—10.1, the *Winfield* court stated:

"[W]e do not perceive the existence of any conflict between Rule 238 and section 115—10.1 which would render the latter unconstitutional. Section 115—10.1 is a rule of evidence governing the substantive use of prior inconsistent statements in criminal cases, an area of law in which the supreme court has not exercised judicial power. In contrast, Rule 238 states the rule with regard to the use of such statements for impeachment purposes. We agree with the State that Rule 238 retains its own unique purpose, and is not subsumed into the new statute. We therefore hold that there is no separation of powers violation here." 160 Ill. App. 3d at 994.

Similarly, in *People v. Hastings* (1987), 161 Ill. App. 3d 714, 722, 515 N.E.2d 260, the court found that Rule 238 and section 115—10.1 are complementary, rather than conflicting, and that in light of the legislature's authority to create rules of evidence, there was no separation of powers violation. We adopt the rational of *Winfield* and *Hastings* and conclude that section 115—10.1 does not conflict with Supreme Court Rule 238.

Defendant next contends that the trial court's decision to admit Buford's prior inconsistent statement as substantive evidence against him deprived him of his rights to due process and a fair trial because: (1) his sixth amendment right to confrontation was violated; (2) the State had failed to rebut the presumption of unreliability which attaches to a codefendant's statement: (3) the statement had not been made under oath; and (4) the statement did not "interlock" with defendant's statement and, thus, lacked any indicia of reliability.

■ First, with respect to the alleged violation of the confrontation clause of the sixth amendment, in *California v. Green* (1970), 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930, the Supreme Court held that a California statute which allowed prior inconsistent statements to be admissible as substantive evidence provided that the statement was inconsistent with the witness' testimony at trial and that the witness was given an opportunity at trial to explain or to deny the prior statement did not violate the confrontation clause of the Constitution because it allowed for the full cross-examination concerning the prior statement.

■ Defendant attempts to distinguish *Green* from the present case by noting that the defendant in *Green* had conceded to making the prior statement, while Buford denied having made the statement. We find this distinction spurious. The *Green* court specifically stated that, "If the witness admits the prior statement is his, or if there is other evidence to show the statement is his, the danger of faulty re-

production is negligible ***." (399 U.S. at 158, 26 L. Ed. 2d at 497, 90 S. Ct. at 1935.) In the present case, although Buford denied having made the statement, he identified the signature on the statement as his and admitted that he had signed it. In light of Buford's testimony as to his signature, the issue as to whether he actually gave the statement is one of credibility properly reserved for the trial court and we will not substitute our judgment.

■ Defendant further argues that his right to confrontation was not satisfied because when Buford denied making the statement, he could not cross-examine Buford to test the reliability of his statement. We find this argument unpersuasive for two reasons. First, Buford was called as a defense witness and, as such, was not subject to cross-examination by defendant. Second, the fact that Buford denied having made the statement, thus limiting redirect, has no bearing on the right to confrontation under section 115—10.1. Not only was extensive cross-examination conducted, there was ample opportunity for redirect if defense counsel chose to do so. The fact that redirect was rendered unnecessary in defense counsel's opinion was not the result of section 115—10.1. Rather, it was the result of the testimony of defense counsel's own witness. We further find defendant's reliance on *People v. Spicer* (1979), 79 Ill. 2d 173, 402 N.E.2d 169, misplaced on the grounds that *Spicer* was decided prior to the enactment of section 115—10.1 and was decided on evidentiary, not constitutional, grounds.

■ Next, in reliance on *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056, defendant contends that the State failed to rebut the presumption of unreliability which attached to Buford's post-arrest statement because he was a codefendant. In our view, *Lee* is factually distinguishable and unpersuasive of defendant's position. In *Lee*, petitioner and codefendant were tried jointly in a bench trial for a double murder. Neither defendant testified. In finding petitioner guilty of both murders, the court specifically relied on portions of the codefendant's confession which implicated petitioner. The Supreme Court held that the trial court's reliance on the codefendant's confession when the codefendant had not testified violated petitioner's rights under the confrontation clause of the sixth amendment. In reaching its decision, the Court noted that the right to confront and to cross-examine witnesses is a functional right that promotes reliability and that this function is threatened when an accomplice's confession is sought to be introduced against a defendant without the benefit of cross-examination. In the present case, Buford testified as a defense witness and was examined and cross-examined extensively.

In addition, we find defendant's reliance during oral argument on *Cruz v. New York* (1987), 481 U.S. 186, 95 L. Ed. 2d 162, 107 S. Ct. 1714, misplaced. In *Cruz*, Benjamin and Eulogio Cruz were tried jointly for murder. Over Eulogio's objection, the trial court allowed the prosecutor to introduce Benjamin's videotaped confession which implicated Eulogio. Benjamin did not testify. In allowing the videotape to be admitted into evidence, the trial court warned the jury that the confession was not to be used against Eulogio. The jury convicted both defendants. The appeals court affirmed.

Upon granting *certiorari*, the United States Supreme Court reversed and remanded the cause for further proceedings, holding:

> "[W]here a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant [citation], the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him." 481 U.S at 193, 95 L. Ed 2d at 172, 107 S. Ct. at 1719.

In our view, the *Cruz* holding is inapplicable to the case at bar. In *Cruz*, the Supreme Court addressed the question as to whether a nontestifying codefendant's confession which incriminated the defendant is admissible at a joint trial even if the jury is instructed not to consider it against the defendant and the defendant also had confessed. A distinctly different question is before this court in the present case. Here, the issue is whether section 115—10.1, which allows the prior inconsistent statement of a testifying witness to be admitted as substantive evidence against a defendant, violates the defendant's rights to due process and a fair trial when the testifying witness is a codefendant.

■■ Defendant next argues that Buford's prior statement lacked a minimum of indicia of reliability because it had not been made under oath. In *Green*, the United States Supreme Court specifically found that the absence of an oath at the time the prior statement was given was irrelevant provided that the witness had been given the opportunity at trial to affirm, deny, or qualify the truth of the prior statement. (*Green*, 399 U.S. at 158-59, 26 L. Ed. 2d at 497-98, 90 S. Ct. at 1935-36.) As stated, such an opportunity was available in the present case.

■■ Finally, defendant claims that Buford's statement lacks reliability because it does not "interlock" with defendant's statement. The concept of "interlocking" statements was argued in *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056, previously

discussed. In *Lee*, where neither the petitioner nor codefendant had testified at trial, the State argued that because the codefendant's prior statement and petitioner's prior statement were similar on some points, *i.e.*, "interlocked," the codefendant's statement should be deemed trustworthy in its entirety. The Supreme Court found this argument unpersuasive, stating that although some of the details between the two statements were similar, the discrepancies concerned significant matters.

It is important to note that the concept of interlocking statements was argued in *Lee* to rebut the presumption of unreliability which attached to "uncrossed-examined" evidence. As discussed, this presumption does not arise in the present case because there was extensive cross-examination and ample opportunity for redirect. Further, although Buford's prior statement that defendant was aware of the plans to rob Winfield Groceries may not have interlocked with defendant's statement at trial, it did interlock on significant matters with defendant's written and signed post-arrest statements. Resolution of whether the statements which interlock are credible or whether any conflict renders the prior statements unreliable is a question properly reserved for the trier of fact, and this court will not disturb the trial court's judgment unless the evidence is so improbable as to raise a reasonable doubt as to defendant's guilt. (*People v. Vandiver* (1984), 127 Ill. App. 3d 63, 468 N.E.2d 454.) In our view, the evidence does not raise a reasonable doubt as to defendant's guilt.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and MANNING, JJ., concur.