THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RONALD EDWARDS, Defendant-Appellant.

Second District   No. 2—86—0341

Opinion filed March 11, 1988.

G. Joseph Weller, Charles M. Schiedel and James E. Chadd, all of State Appellate Defender's Office, of Springfield, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Lori J. Miller, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendant, Ronald Edwards, was charged by information with murder, voluntary manslaughter, attempted murder, and armed vio-

lence. A jury found defendant not guilty of murder but guilty of voluntary manslaughter, attempted murder, and armed violence. The trial court entered a judgment of conviction on all three verdicts but imposed concurrent eight-year terms on only two of the convictions, voluntary manslaughter and armed violence. Defendant appeals from these convictions.

In this court, defendant contends that: (1) the trial court improperly excused a juror for cause; (2) the trial court abused its discretion in denying defendant's motions for continuance; (3) section 115—10.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1), which allows the use of prior inconsistent statements as substantive evidence, violates the separation of powers doctrine and is, therefore, unconstitutional; and (4) the trial court erred in entering a judgment of conviction on both the armed violence and the attempted murder guilty verdicts.

On October 28, 1985, defendant was charged by information with the offenses of murder, voluntary manslaughter, attempted murder, and armed violence. The case was set for trial on December 16, 1985, but on December 9 defendant moved to continue the case. The case was continued until January 6, 1986. On December 11, 1985, the State moved to continue the case until February 10, 1986. Defendant objected, commenting that a continuance would have the effect of setting the case over for more than 1½ months. The court granted the continuance.

On January 29, 1986, defendant filed a motion for continuance alleging, as a reason for the motion, the fact that his counsel would be out of town on February 10, 1986. At the hearing on the motion, it was disclosed that defense counsel had planned a vacation during the week of February 10. Counsel for the defendant also indicated that the defense was not prepared for trial. The court denied defendant's motion after expressing its concern over the likelihood of obtaining the presence of certain witnesses if the case were continued from February 10. The court pointed out that in order to guarantee the presence of these witnesses on February 10, the date set for trial, the court had already had to have the witnesses picked up on body attachments and then released on recognizance bonds with orders to appear to testify on February 10.

Additionally, the court expressed its displeasure over the fact that defense counsel had apparently planned his vacation in November or December but had failed to advise the court of these plans and had allowed the case to progress without any indication that the defense did not intend to go to trial on February 10.

On February 5, 1986, defense counsel moved again for a continuance. The court denied the motion. Defendant then filed a motion for substitution of counsel which the court allowed, based on the new counsel's promise to be ready for trial on February 10.

On February 10, the newly substituted counsel moved to continue the case, arguing that although he had been diligently investigating the case, he needed more time to complete the investigation since little investigation of the case had been accomplished by the previous attorneys. The court continued the case to February 18.

On February 18 jury selection began. During the *voir dire* a juror stated that he would not be able to decide the case fairly unless he knew what the possible punishments would be. The State asked that the juror be excused for cause. The court inquired further of the juror, explaining that the function of the jury was to determine the guilt or innocence of the defendant regardless of the penalties that could be imposed. The juror responded that he would be unable to be impartial unless he knew whether or not the death penalty was a possible punishment. The court excused the juror, stating the juror's excusal was based on the fact that the juror was unwilling to follow the law under certain circumstances.

On February 19, 1986, the trial commenced. Very briefly summarized, the evidence presented at trial showed that on October 13, 1985, at around 5 p.m., Carlton Williams, Jeff Williams, Clyde Lewis, Bret Steve Price, and Steve Taylor went to a house located at 603 South McAlister in Waukegan. A number of people were already at that house, including the defendant, Gary Beckwith, Adrian Sherrod, and Reginald Handy. When Carlton Williams' group arrived at the house, Williams challenged Gary Beckwith to a fight.

Defendant decided to get involved in the fight. The testimony varied as to whether Carlton Williams first fought Beckwith and then fought the defendant or whether Williams fought the defendant before fighting Beckwith. All the testimony, however, indicated that Carlton fought both defendant and Beckwith, knocking both of them repeatedly to the ground. Defendant's face was bleeding, and he was crying as his girlfriend, Bobbie Vaughn, pulled Carlton Williams off of defendant.

After fighting defendant and Beckwith, Carlton Williams began fighting Adrian Sherrod. It was during this fight while Carlton Williams was on top of Sherrod and hitting him that Williams was shot.

Some witnesses testified that they heard someone yell, "Pop him, Clyde," while Carlton Williams and Sherrod were fighting. One of these witnesses, Reginald Handy, stated that he saw Clyde Lewis pull

out a gun, aim it at Sherrod and fire two shots. Other witnesses testified that they saw defendant shoot Carlton Williams while Williams was fighting with Sherrod. Some of these witnesses also saw defendant fire shots at Bret Steve Price and Jeff Williams as they ran away from the scene. Jeff Williams was shot in the back as he fled.

One witness, Johnnie Gooden, testified that after the shootings she saw defendant enter the house with a gun in his hand, saying, "Here, take this," and that Gary Beckwith took the gun from defendant. Another witness, Cheri Cox, related that after defendant came into the house, she heard him discussing with several men whether he should turn himself in. The witness also heard defendant say, "That's good for him, that's why I popped him."

The State was permitted, over defense objection, to use prior inconsistent statements of two of its own witnesses, Aaron Whitfield and Bobbie Vaughn, as substantive evidence. Contrary to their testimony at trial, both witnesses stated in those prior statements that defendant shot Carlton Williams.

The jury found defendant not guilty of the murder of Carlton Williams but guilty of voluntary manslaughter. Additionally, the jury returned guilty verdicts against defendant for the attempted murder and armed violence as to Jeff Williams. The trial court entered judgment on the three convictions. Following a sentencing hearing on April 16, 1986, defendant was sentenced to concurrent eight-year terms for the voluntary manslaughter conviction and the armed violence conviction. No sentence was imposed for the attempted murder conviction.

■ Defendant first contends that the trial court improperly excused a juror for cause when that juror indicated he could not decide the instant case fairly without knowing what possible punishments were applicable. Specifically, the juror informed the court that he could not be impartial if the death penalty was a possibility. Defendant maintains that the court's refusal to inform this juror of the death penalty's inapplicability to the present case resulted in the improper excusal of a fair and impartial juror.

The purpose of *voir dire* is to assure the selection of an impartial jury. (*People v. Jackson* (1977), 69 Ill. 2d 252, 260; *People v. Chamness* (1984), 129 Ill. App. 3d 871, 873.) The trial court is granted broad discretion in conducting and managing *voir dire* (107 Ill. 2d R. 234), and the determination whether to ask certain questions of prospective jurors is within this discretion. (*People v. Sequoia Books, Inc.* (1987), 160 Ill. App. 3d 750, 757.) It is also within the sound discretion of the trial court to decide whether to grant a challenge for cause (*People v. Pecina* (1985), 132 Ill. App. 3d 948, 954), and a ruling excusing a juror

for cause should not be set aside unless it is against the manifest weight of evidence. (*People v. Singletary* (1979), 73 Ill. App. 3d 239, 246.) Under the facts presented in the instant case, we do not believe it was an abuse of discretion to excuse the juror in question from serving on the panel.

■ During *voir dire*, the prosecutor asked Kenneth Jacobs, the juror in issue, what his verdict would be if the charge of murder was proved beyond a reasonable doubt. Jacobs responded: "It would be based upon what the punishment is." The prosecutor, through questioning, attempted to explain to Jacobs that, in any particular case, the judge, and not the jury, determines the punishment. The prosecutor then inquired of Jacobs whether he could decide the case fairly without knowing what the possible punishments would be. Jacobs responded, "No."

The prosecutor in a sidebar conference expressed his concern to the court that Jacobs be excused for cause due to his admission that he could not be fair. Alternatively, the prosecutor asked the court to inquire further and determine whether Jacobs could be a fair juror. The court then proceeded to question the juror, and the following conversation occurred:

"THE COURT: The jury will not be apprised as to what the possible punishments if any are in this case. That is something that is reserved strictly for the determination of the court. The jury's function in this case will be to determine what the facts are. So now, with that information, will you be able to act as a fair and impartial juror, knowing that you will not be told what the possible punishments are, nor are you allowed to know what they are?

THE JUROR: I think I would like to ask if there is a death penalty in Illinois.

THE COURT: Well—

THE JUROR: I don't know. Am I entitled to know that?

THE COURT: The function that you have is to make a determination of guilt or innocence, and that function of guilty or innocence is irregardless of what the possible penalties might be; so without any, without, since that is something that is beyond the scope of the province of the jury, can you act as a fair and impartial juror without knowing what the potential penalties are?

THE JUROR: I have to presume that there is a death penalty in Illinois, because I don't know contrary to that, and if I, if there is the possibility of that, then I cannot be impartial.

THE COURT: You could not be impartial?

THE JUROR: If you told me there is no death penalty it would be different. I don't know what the law is.

THE COURT: I will excuse you for cause. You may step down."

Defense counsel expressed his objection to the decision by the court, arguing that the court was excluding this venireman from the jury because of his disbelief in the death penalty in a nondeath penalty case. The court responded:

"THE COURT: He was excused because he told me he will not follow the Court's instructions. I told him it is his obligation without regard to the penalty to make a determination, he told me he will not do that under certain circumstances. He does not have the option of dictating under what circumstances he will follow the law, therefore he was excused."

We find the court's explanation for the excusal of the juror to be proper, as the juror's comments clearly indicated that under certain circumstances, he was unwilling to accept and follow the law of the case. Furthermore, we recognize the superior position of a trial judge to ascertain the meaning which a venireman intends to convey by his responses, and in this case, Jacobs had already raised the question of his ability to follow the court's instructions during an earlier conversation regarding the juror's feelings regarding firearms.

"THE COURT: Do you own any firearms?

THE JUROR: No.

THE COURT: Do you have any strong feelings one way or the other about firearms?

THE JUROR: Yes.

THE COURT: Are you opposed to firearms, or—

THE JUROR: Yes.

THE COURT:—in favor of firearms? If the evidence was to show that firearms were involved in this case, would that fact cause you to be biased against either side?

THE JUROR: Probably would.

THE COURT: Do you think you would be able to put that out of your mind if I were to instruct you, and I do, that you should not let your personal feelings regarding firearms influence your decision in this case, can you do that?

THE JUROR: It would not be easy. I am a member of the Humanistic Church Temple, also.

THE COURT: I don't know what that is.

THE JUROR: I don't believe in those things.

THE COURT: Well, on the other hand, I will be instructing you as to the law, and that is the law you must apply to the facts in this case.

THE JUROR: Okay.

THE COURT: Even if you think that the law should be different, you are still under an obligation and will be given an oath which says you will follow that law. Now, can you do that?

THE JUROR: Yes.

THE COURT: On the other than [hand], if you can't, you should tell me. I need to know that.

THE JUROR: I feel it would be difficult, but not impossible.

THE COURT: Well, will you do it?

THE JUROR: I guess I will."

As illustrated by this dialogue, Jacobs, contrary to defendant's contention in this court, expressed other concerns besides the death penalty and implied through his answers that he would have difficulty following the law. Thus, on the record before us we cannot conclude that the trial judge's excusal of Jacobs based on the juror's unwillingness to follow the court's instructions regarding the law was an abuse of the court's discretion.

Reversible error will only be found where the trial judge's conduct during *voir dire* amounted to an abuse of discretion and thwarted the selection of an impartial jury. (*People v. Allen* (1986), 148 Ill. App. 3d 200, 206.) That has not been shown here, as defendant has failed to establish that the exclusion of this particular juror denied him a fair and impartial jury. Moreover, the right to a fair and impartial jury does not translate to a right to have a particular individual included on the panel. (*People v. Campbell* (1984), 126 Ill. App. 3d 1028, 1040.) Furthermore, based on Jacobs' expressed bias against firearms, we question, as does the State, whether defendant would have ultimately favored this juror.

Finally, we note from the record that the State did not utilize its peremptory challenges, so if the challenge for cause had not been permitted, the State could have used its remaining challenge to eliminate the juror in question from the panel. *People v. Nicholson* (1978), 61 Ill. App. 3d 621, 627.

■ In his second contention defendant argues that the trial court abused its discretion in denying defendant's motions for a short and reasonable continuance because that denial had the effect of denying defendant his sixth and fourteenth amendment right to counsel.

The grant or denial of a motion for continuance is within the sound discretion of the trial judge (Ill. Rev. Stat. 1985, ch. 38, par. 114—4(e);

*People v. Burba* (1985), 134 Ill. App. 3d 228, 234) and is a matter to be determined under the particular facts and circumstances of the case (134 Ill. App. 3d at 234; *People v. Tyler* (1984), 128 Ill. App. 3d 1080, 1097). A continuance for the purpose of allowing defense counsel further time to prepare is not erroneously denied unless the denial serves to prejudice defendant in some way. *(People v. Sayles* (1985), 130 Ill. App. 3d 882, 889.) To warrant reversal of the trial court's ruling regarding the denial of a continuance, the defendant must demonstrate that the denial embarrassed him in the preparation of his defense so as to prejudice his rights. *People v. Davenport* (1985), 133 Ill. App. 3d 553, 556.

■ In the instant case defendant was formally charged on October 28, 1985. Trial was set for December 16, 1985. On December 9, 1985, defendant continued the case until January 6, 1986. At that time defense counsel assured the court that the defense would be ready to go to trial on that date. On December 11, 1985, the State moved to continue the case until February 10, 1986. Defense counsel objected to the State's motion, pointing out that the State's continuance would result in more than 1½ months' delay, implying thereby that this would create too great a delay in bringing defendant to trial. Yet, despite this implication and defendant's earlier assurance to the court that the defense would be ready to proceed on January 6, defendant moved for a continuance on January 29, 1986.

In his written motion for continuance, defendant alleged that his attorney would be out of town on February 10, 1986, the date of trial. At the hearing on defendant's motion, it was disclosed that defendant's attorney was taking a vacation with his family during the week of trial and that the attorney had scheduled the vacation trip in November or December. Additionally, it was brought out at the hearing that counsel for defendant was not prepared for trial.

The court denied defendant's motion for continuance based on its concern that if the trial were postponed a third time, many of the witnesses would fail to appear. The court pointed out that thus far certain potential witnesses were "at best recalcitrant" and that at least six of them had already been picked up on body attachments and released on recognizance bonds with orders to appear to testify on February 10. Additionally, the court based its denial of defendant's motion on the defense counsel's failure to apprise the court at the earliest opportunity of his unavailability for trial on February 10 due to vacation plans. Again, the court stressed the loss of witnesses and the fact that justice would not be accomplished if the trial did not proceed on the date those witnesses were ordered to appear.

We agree with the State that both the facts related above and the statutory guidelines illustrate that the trial court did not abuse its discretion in denying defendant's motion for continuance. Although a court may grant a continuance if justice so requires (Ill. Rev. Stat. 1985, ch. 38, par. 114—4(d)), justice required here that the cause proceed on February 10, 1986, the date previously scheduled for trial, because of the witness problem in the instant case. Moreover, all requests for continuance are to be considered in light of the diligence or lack thereof on the part of the movant (Ill. Rev. Stat. 1985, ch. 38, par. 114—4(d); *People v. Williams* (1985), 131 Ill. App. 3d 597, 606-07), and, in our view, the record evidences the defendant's lack of diligence.

On February 5, 1986, defendant renewed his motion for continuance which the trial court also denied. Defendant then moved for a substitution of attorneys. The court allowed this motion based on the substitute counsel's promise to go to trial on February 10. On February 10; however, the substituted counsel appeared before the court and sought a continuance, explaining to the court that although he had diligently investigated the case not much had been accomplished in the investigation by the previous attorneys. Additionally, counsel had recently received information concerning new and contradictory statements by certain State witnesses, which counsel wanted to explore. Also, counsel had been ill for two days after his substitution.

The court granted the substitute counsel's motion for continuance based on the facts that defendant was entitled to an adequately prepared trial and that prior to counsel's substitution, no substantial preparation had been done on defendant's case. The court continued the case until February 18, and on that date the case proceeded to trial.

From our review of the proceedings, we conclude that defendant did not suffer any prejudice as a result of the denial of his January 29 and February 5 motions to continue, which led to the substitution of counsel. At trial the substituted defense counsel conducted thorough and vigorous examination of the State's witnesses and raised numerous objections to the State's evidence, moved for a directed verdict at the close of the State's evidence and argued that motion before the trial judge, presented a comprehensive and powerful closing argument at the conclusion of the trial, and filed a post-trial motion which he argued in favor of during the post-trial proceedings. Given the substantial job the substituted counsel did for defendant, defendant cannot realistically argue that the trial court's denial of his motions to continue, which ultimately resulted in the substitution of counsel, prejudiced his rights in any way. We, therefore, conclude that the trial court did not

abuse its discretion in refusing to grant defendant's continuances.

Defendant argues in his third contention that section 115–10.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115–10.1), which permits prior inconsistent statements to be used as substantive evidence, violates the separation of powers doctrine and is, therefore, unconstitutional. Specifically, defendant contends that in enacting section 115–10.1 the legislature has unconstitutionally infringed on the judiciary's inherent power to determine the manner in which evidence is to be considered and the trial to be conducted.

It is the undisputed duty of the Illinois Supreme Court to protect its judicial powers from encroachment by legislative enactments in order to preserve an independent judiciary. (*People v. Joseph* (1986), 113 Ill. 2d 36, 46.) If a power is judicial in nature, the legislature is expressly prohibited from exercising it. (113 Ill. 2d at 41; *People v. Jackson* (1977), 69 Ill. 2d 252, 256.) The legislature, however, possesses the power to enact laws governing judicial practice, provided it does not unduly infringe upon the inherent powers of the judiciary. (*People v. Mason* (1986), 145 Ill. App. 3d 218, 222.) "[W]hen this court has not acted in an area into which it is arguable that the 'judicial power' extends, section 16 of article VI (Ill. Const. 1970, art. VI, §16) [granting the supreme court supervisory and administrative powers over the courts] does not purport to exclude the legislature from acting in any way which may have a *peripheral* effect on judicial administration." (Emphasis in original.) *Joseph*, 113 Ill. 2d at 43.

For example, and, particularly applicable to the instant case, the supreme court has deemed the legislative enactment of rules of evidence to be peripheral to judicial administration. (*People v. Rolfingsmeyer* (1984), 101 Ill. 2d 137.) In *Rolfingsmeyer*, the defendant argued that a statute rendering evidence of a refusal to submit to a breath test admissible in a trial on a charge of driving under the influence was unconstitutional because it invaded the judiciary's authority and, therefore, violated the separation of powers doctrine. The supreme court rejected the argument and held the statute to be constitutional because the legislature " 'has the power to prescribe new and alter existing rules of evidence or to prescribe methods of proof.' " 101 Ill. 2d at 140, quoting *People v. Wells* (1942), 380 Ill. 347, 354; see also *People v. Blythe* (1987), 153 Ill. App. 3d 292, 294; *People v. Buford* (1982), 110 Ill. App. 3d 46, 53.

Section 115–10.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115–10.1) reads as follows:

"Admissibility of Prior Inconsistent Statements. In all crimi-

nal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

    (a) the statement is inconsistent with his testimony at the hearing or trial, and

    (b) the witness is subject to cross-examination concerning the statement, and

    (c) the statement—

        (1) was made under oath at a trial hearing, or other proceeding, or

        (2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and

            (A) the statement is proved to have been written or signed by the witness, or

            (B) the witness acknowledged under oath the making of the statement either in his testimony at the hearing or trial in which the admission into evidence of the prior statement is being sought, or at a trial, hearing, or other proceeding, or

            (C) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording.

Nothing in this Section shall render a prior inconsistent statement inadmissible for purposes of impeachment because such statement was not recorded or otherwise fails to meet the criteria set forth herein."

   ■ Because section 115—10.1 constitutes a rule of evidence governing the substantive use of prior inconsistent statements in criminal cases, an area of law in which the supreme court has not exercised judicial power (*People v. Winfield* (1987), 160 Ill. App. 3d 983, 994), we find no separation of powers violation here.

Defendant also argues, however, that the Illinois Supreme Court has specifically addressed the issue of the use of prior inconsistent statements as substantive evidence and found such uses to be impermissible. To support this position, defendant relies on *People v. Collins* (1971), 49 Ill. 2d 179, and *People v. Weaver* (1982), 92 Ill. 2d 545. In rejecting the use of a prior inconsistent statement as substantive evidence in *Weaver*, the supreme court stated that it could not accept such statements as substantive evidence "unless and until we decide in this State [that] such prior statements can be used against a defendant as substantive evidence." (*Weaver*, 92 Ill. 2d at 564-65.) We submit that this use has been decided, as illustrated by the enactment of section 115—10.1. In *Collins*, the court stated that it was "unwilling, *at this*

*time* and upon the basis of the *experience and opinion presently available,* to adopt a rule which permits the substantive use of prior out-of-court statements of witnesses." (Emphasis added.) (*Collins,* 49 Ill. 2d at 198.) Additionally, the court stated: "[I]t would be basically unfair to apply such a significant change in doctrine without advance notice to all parties." 49 Ill. 2d at 197.

In the instant case, such a problem was not present as the record clearly indicates that all parties were very familiar with section 115—10.1 and the new rule regarding the substantive use of prior inconsistent statements. Moreover, the rule prohibiting the substantive use of prior inconsistent statements is no longer the rule generally in this country as it was in 1971 when the *Collins* case was decided. Today, the majority of States allow some form of substantive use of prior inconsistent statements. Comment, *Prior Inconsistent Statements As Substantive Evidence: Illinois Takes the Sting Out of the Turncoat Witness,* 19 J. Marshall L. Rev. 69 (1985).

Moreover, defendant's argument ignores the fact that our supreme court has acknowledged acceptance of the rule set forth in section 115—10.1. In *People v. King* (1986), 109 Ill. 2d 514, 529-30, the supreme court found that a defense witness' prior inconsistent statement before the grand jury was proper impeachment. The court then noted, in *obiter dictum,* that under section 115—10.1, which was not in effect at the time the crimes occurred in *King,* a prior inconsistent statement would now be admissible as substantive evidence. Further, the appellate court has very recently addressed the issue of the use of prior inconsistent statements as substantive evidence and found such use to be permissible. See *People v. Hastings* (1987), 161 Ill. App. 3d 714, 720-22; *Winfield,* 160 Ill. App. 3d at 991-95.

In light of the foregoing discussion and the recent decisions in *Hastings* and *Winfield,* we conclude that no infringement of judicial powers was effected by the enactment of section 115—10.1 and that, therefore, section 115—10.1 is constitutional. Accordingly, the court's permitting the substantive use of the prior inconsistent statements of two of defendant's friends who had personal knowledge of the events related in their statements, who were shown to have signed those statements, and who were subject to cross-examination at trial was proper and did not deny defendant a fair trial.

■ Last, defendant contends that the trial court erred in entering judgment on both the armed violence and the attempted murder guilty verdicts since both offenses arose from a single act. Defendant argues that he should have been convicted of only the more serious of the two offenses, attempted murder, and that, therefore, his conviction for

armed violence must be vacated.

The State acknowledges that it was improper for defendant to be convicted of both attempted murder and armed violence and that generally in a case such as the instant one, the conviction and sentence should be on the more specific offense. However, the State urges this court to vacate the attempted murder conviction rather than the armed violence conviction. It is the State's argument that vacatur of the armed violence conviction would leave the defendant with no sentence at all for the offenses committed against Jeff Williams since defendant was not sentenced on the attempted murder conviction. In the alternative, the State asks that if this court vacates the armed violence conviction, the court transfer the eight-year sentence imposed for the armed violence conviction to the attempted murder conviction.

When more than one offense arises from the same physical act, convictions for both cannot stand. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 170; *People v. Baity* (1984), 125 Ill. App. 3d 50.) Judgment should be entered and sentence imposed only on the more serious offense. *Donaldson*, 91 Ill. 2d at 170.

Both armed violence and attempted murder constitute serious offenses; both are Class X felonies, carrying a sentence from 6 to 30 years and, thus, the identical eight-year sentence imposed for the armed violence conviction is equally applicable to the attempted murder conviction. Nevertheless, attempted murder is a specific intent crime whereas armed violence is a general intent crime. Since attempted murder constitutes the more specific offense, it is the offense of the two in question upon which the court should have entered judgment and imposed sentence.

Although it may be likely that the trial judge would have imposed an identical eight-year sentence had he sentenced defendant on the attempted murder conviction instead of the armed violence conviction, such a conclusion on our part amounts to second-guessing. Moreover, it is not the function of a reviewing court to serve as a sentencing court (*People v. Cox* (1980), 82 Ill. 2d 268, 280), and, therefore, we decline the State's request to transfer defendant's eight-year sentence for the armed violence conviction to the attempted murder conviction.

Accordingly, we affirm the judgment of the circuit court of Lake County but vacate the armed violence conviction and remand the cause for sentencing on the attempted murder conviction.

Affirmed, vacated, and remanded.

DUNN and UNVERZAGT, JJ., concur.