THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RODNEY MASSEY, Defendant-Appellant.

Fifth District    No. 5—89—0594

Opinion filed October 8, 1991.

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Scott Mansfield, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, Rodney Massey, was convicted of first-degree murder, attempted first-degree murder, armed violence, and aggravated battery. (Ill. Rev. Stat. 1989, ch. 38, pars. 9—1, 8—4, 33A—2, 12—4.) He was sentenced to concurrent prison terms of 15 years for attempted first-degree murder, 15 years for armed violence, and five years for aggravated battery. The sentence for attempted first-degree murder was to be served consecutively to a 35-year prison sentence imposed on the first-degree murder conviction. On appeal, defendant contends that: (1) the armed violence and aggravated battery convictions must be vacated because they are based on the same physical act which is the basis for the attempted first-degree murder conviction; (2) the cause should be remanded for resentencing because the court considered the offenses which should be vacated when it imposed sentence for attempted murder; and (3) the court improperly denied his motion for release of property.

At trial, Anthony Manning testified that he and his brother, Robert Manning, came to Illinois from their home in New York with defendant in April 1989. The three had been staying at a house in Washington Park, Illinois. On the morning of April 7, 1989, at approximately 11 a.m., defendant came out of the bathroom and shot Anthony Manning in the head. Defendant then shot Robert Manning and kept firing the gun. After defendant ran out of the house, Anthony Manning ran to get help. Anthony Manning denied that he or his brother ever threatened defendant, denied that he or Robert Manning had a gun, and denied that defendant had any reason to shoot them because they all had been friends.

Frank Franklin, police officer for the City of Washington Park, testified that at approximately 9:30 a.m. on April 7, 1989, a mail carrier advised him that she thought that a man had been shot in the front yard of the 5200 block of East Gate. Franklin proceeded to that address and observed Anthony Manning sitting on the porch. Anthony Manning stated that he had been shot. Other police officers arrived, and the body of Robert Manning was found in the house. Anthony Manning furnished the officers with the name of the suspect. The suspect was described as wearing a black jogging-type suit and having a goatee and some facial hair, possibly a mustache. Franklin and another police officer, Paul Apostol, started to search for the suspect. After patrolling on different streets, Franklin observed the suspect, who had a pistol in his hand, running. Franklin and Apostol then started foot pursuit of the suspect, whom Franklin identified in court

as the defendant. Herbert Woodall, another officer, joined in the pursuit. Woodall was the officer who captured defendant, who was wearing a black jogging suit and had a goatee and mustache.

Paul Apostol testified that after arriving at the scene of the shooting, Anthony Manning advised him that defendant, who was wearing an all-black outfit, had shot him and then ran off. Defendant had short hair, a goatee, and a mustache. Apostol corroborated much of Franklin's testimony concerning the pursuit of defendant. After defendant was captured, Eddie Thomas handed Apostol a blue steel .32 caliber revolver.

Herbert Woodall, a newspaper carrier and deputy marshall with the Washington Park police force, testified that he heard the police radio traffic concerning the pursuit of the defendant and joined the hunt. Woodall observed defendant run down a driveway from between two garages. When Woodall told him to "Stop! police," defendant, who had his hand in his right pocket, turned toward Woodall, and Woodall fired three shots at him. Defendant was shot in the leg.

John Matt, another Washington Park police officer, testified that he went to the place where defendant was captured and searched him. Matt found two sealed baggies which contained money and one open baggie which contained money. He found no weapons on defendant.

Eddie Thomas testified that he saw a man, who was wearing all black and was being chased by the police, in his backyard. About 10 minutes later, he saw the chase continue across a parking lot. Thomas found a .32 caliber Smith & Wesson gun in his backyard and gave the gun to the police. Defendant resembled the man Thomas had seen in his backyard.

Frederick Cason, a surgeon, testified that on April 7, 1989, he observed Anthony Manning, who had suffered four gunshots, in the emergency room of St. Mary's Hospital in East St. Louis, Illinois. One gunshot wound traveled from behind the ear to the front of the ear, passing through the ear canal, but not fracturing any bone. A second wound was to the upper right thigh. A third wound was below the right knee. The last wound was at the base of the right buttock.

Dr. Cason examined Robert Manning and ordered him transferred to a neurosurgeon at St. Louis University Hospital. Robert Manning suffered from one gunshot wound which passed from one hemisphere of the brain to the second hemisphere, with coma.

Philip Burch, a physician and medical examiner, testified that an autopsy report of Dr. Michael Graham of the medical examiner's of-

fice listed the cause of death of Robert Manning as a gunshot wound to the head. The bullet which penetrated the brain was recovered.

The presentence report reveals that defendant, age 21, has approximately three months' verifiable employment. Defendant stated that he earned approximately $2,000 per month as a self-employed furniture refinisher. Defendant was sentenced to three years' confinement in 1986 after a general court martial by the United States Army and was given a bad-conduct discharge. He has no other convictions or history of juvenile delinquency.

Defendant initially contends that his convictions for armed violence and aggravated battery should be vacated because those convictions are based on the same act as the attempted first-degree murder conviction. Count II of the indictment alleged attempted first-degree murder in that defendant, intending to kill Anthony Manning, "shot Anthony Manning in the head with a gun." Count III of the indictment alleged armed violence in that defendant, while armed with a dangerous weapon, a gun, committed aggravated battery where he "intentionally and without legal justification shot Anthony Manning in the head with a gun, thereby causing great bodily harm to Anthony Manning." Count IV alleged aggravated battery in that defendant, "without legal justification, intentionally caused great bodily harm to Anthony Manning in that he shot Anthony Manning in the head with a gun."

■ In Illinois, it is well established that multiple convictions for both armed violence and the underlying felony cannot stand where a single physical act is the basis for both charges. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477; *People v. Johnson* (1990), 200 Ill. App. 3d 1018, 558 N.E.2d 607.) The elements of the offense of armed violence are simply stated: "A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law." (Ill. Rev. Stat. 1989, ch. 38, par. 33A—2.) Therefore, "[o]ne cannot violate the armed violence statute without first committing a felony. The alleging of that felony in the armed violence charge has the effect, upon conviction, of making it a necessarily included offense." *Donaldson*, 91 Ill. 2d at 170, 435 N.E.2d at 479.

Here, there was only one alleged act, a single shot to Anthony Manning's head. Therefore, defendant's convictions for both armed violence and its underlying felony, aggravated battery, were improper and the aggravated battery conviction must be vacated. *People v. Kujawa* (1985), 132 Ill. App. 3d 828, 829, 477 N.E.2d 759, 760; *Donaldson*, 91 Ill. 2d at 170, 435 N.E.2d at 479; *Johnson*, 200 Ill. App. 3d at 1021, 558 N.E.2d at 609.

Further, when more than one offense arises from the same physical act, convictions for both attempted first-degree murder and armed violence cannot stand. (*People v. Edwards* (1988), 167 Ill. App. 3d 324, 337, 521 N.E.2d 185, 194.) In the case at bar, both offenses charged the same act: the shooting of Anthony Manning in the head with a gun. Judgment should be entered and sentence imposed only on the more serious offense. Both armed violence and attempted first-degree murder constitute serious offenses and both are Class X felonies, carrying a prison sentence of from 6 to 30 years. Nevertheless, attempted first-degree murder is a specific intent crime whereas armed violence is a general intent crime. Because attempted first-degree murder constitutes the more specific offense, it is the offense of the two in question upon which the court should have entered judgment and imposed sentence. (*Edwards*, 167 Ill. App. 3d at 337, 521 N.E.2d at 194.) Therefore, where armed violence, aggravated battery, and attempted first-degree murder are based on the same act, armed violence and aggravated battery must be vacated so that only the attempted first-degree murder conviction remains. *People v. Wilkerson* (1984), 123 Ill. App. 3d 527, 537, 463 N.E.2d 139, 147.

The State responds that in *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844, our supreme court held that prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Such prejudice might occur if the parole board considers parole eligibility based on multiple convictions arising out of the same act. (*King*, 66 Ill. 2d at 564, 363 N.E.2d at 844.) The State further responds that indeterminate sentencing and the discretion of the parole board for determining parole eligibility in effect at the time of the *King* decision have been abolished; therefore, one of the reasons for the *King* decision no longer exists. (See Ill. Rev. Stat. 1979, ch. 38, par. 1003—3—2(a).) The State concludes that it should not be disadvantaged by the prohibition of multiple convictions based upon the same act.

However, we believe that other adverse consequences, such as the societal stigma accompanying multiple convictions and the ramifications of those convictions on future sentences defendant may receive, continue to be valid reasons for the prohibition of multiple convictions. (See *Ball v. United States* (1985), 470 U.S. 856, 865, 84 L. Ed. 2d 740, 748, 105 S. Ct. 1668, 1673.) Furthermore, it is fundamental that appellate courts are without authority to override the supreme court or to modify its decisions. (*Beagley v. Andel* (1978), 58 Ill. App. 3d 588, 591, 374 N.E.2d 929, 932; see also *People v. Hall* (1986), 143 Ill. App. 3d 766, 780, 491 N.E.2d 757, 768.) This court, therefore,

must follow the *King* decision and vacate the convictions for armed violence and aggravated battery.

Defendant next contends that if the armed violence and aggravated battery convictions are vacated, the case should be remanded for resentencing on the attempted first-degree murder conviction, because the two lesser convictions may have been improperly considered as aggravating factors in calculating the sentence for attempted first-degree murder. The State responds that due to the heinous and premeditated nature of the offenses the sentences were fully justified; therefore, no consideration was given to the vacated sentences when sentences were imposed for attempted first-degree murder and first-degree murder.

■ At the sentencing hearing, no evidence in aggravation or mitigation was introduced. In sentencing defendant, the court stated, *inter alia*:

> "So as far as factor or factors in mitigation, the fact that you have no substantial criminal record is something the Court will take into consideration. *** It is clear from the verdict that the jury returned that I believe that you committed the offense of First Degree Murder of Robert Manning as charged, and Attempt Murder of Anthony Manning, and out of that Attempt Murder conviction arose also the Armed Violence and Aggravated Battery convictions.
>
> Factors in aggravation would be the fact that you did cause serious bodily harm to Anthony Manning. Of course, there was also the death of Robert Manning. Any lengthy sentence, I believe, might have some deterrent effect on other people in the community. That is not the primary factor for a Court to consider sentencing, but it is a factor. I believe the State has correctly pointed out that under Section 1005—8—4 of Chapter 38, where you are convicted of a Class X or Class 1 Felony, and you inflicted severe bodily harm or injury, the Court shall enter sentences to run consecutively. And, accordingly, the sentences that will be imposed will run consecutively on the charges, or on the verdicts of Murder and Attempt Murder.
>
> Mr. Massey, for the conviction of the First Degree Murder of Robert Manning, I'm going to sentence you to a term of 35 years to the Illinois Department of Corrections. For the conviction of the charge of the Attempt Murder of Anthony Manning, I'm going to sentence you to 15 years to the Illinois Department of Corrections. Those terms to run consecutively.

With regard to the Armed Violence and Aggravated Battery charges, the Armed Violence is also a Class X Felony. I'm not going to impose any additional time, unless it is incumbent upon the Court to impose a penalty, and in that case the sentence would be 15, to run concurrently with the Attempt Murder, and five years on the Aggravated Battery, to run concurrently."

A cause need not be remanded for resentencing in the absence of any indication that the court improperly considered the vacated convictions. (*People v. Bridges* (1989), 188 Ill. App. 3d 961, 969, 545 N.E.2d 367, 372; see also *People v. Poe* (1984), 121 Ill. App. 3d 457, 463, 459 N.E.2d 667, 671-72.) Here, there is no reason to believe that the court increased defendant's sentence for attempted first-degree murder because he was also convicted of aggravated battery and armed violence arising from the same act. Indeed, the court's statement that it was not going to impose any additional time for the aggravated battery and armed violence convictions unless it was "incumbent" upon the court to do so demonstrates that it did not improperly consider those convictions as enhancing the seriousness of defendant's attempted first-degree murder conviction. Defendant's 15-year prison sentence for attempted first-degree murder is therefore affirmed.

Defendant finally contends the trial court erred in denying his motion for release of property, because he had not been charged with any crime relating to the money, and the money is not contraband. The State does not respond to this argument but asks this court to decide the issue "upon the strength of the argument presented in defendant's brief." Immediately after trial, defendant moved for release of money that had been found on his person at the time of his arrest on the basis that there was no reason for the State to continue to hold this money. The money, alleged to be $2,593, had been admitted into evidence at trial. After pronouncing sentence, the trial court denied defendant's motion pending results of any appeal.

Section 108—2 of the Code of Criminal Procedure of 1963 (the Code) provides:

"Custody and Disposition of Things Seized. An inventory of all instruments, articles or things seized on a search without warrant shall be given to the person arrested and a copy thereof delivered to the judge before whom the person arrested is taken, and thereafter, such instruments, articles or things shall be handled and disposed of in accordance with Sections 108—11 and 108—12 of this Code. If the person arrested is re-

leased without a charge being preferred against him all instruments, articles or things seized, other than contraband, shall be returned to him upon release." (Ill. Rev. Stat. 1989, ch. 38, par. 108—2.)

Section 108—11 of the Code provides: "Disposition of things seized. The court before which the instruments, articles or things are returned shall enter an order providing for their custody pending further proceedings." Ill. Rev. Stat. 1989, ch. 38, par. 108—11.

There are two categories of contraband. Contraband *per se* are items the possession of which alone constitutes a criminal offense, *i.e.*, certain narcotics and counterfeit money. Such articles need not be returned to the owner even if improperly seized by law enforcement officers. Derivative contraband are articles which are not inherently illegal, but which have been or are used in an unlawful manner. Money is inherently legal and is not an item the possession of which alone constitutes a criminal offense. Money is not contraband unless it is statutorily declared to be such because of its use in an unlawful manner. When an article is not contraband *per se* its use must have a rational relationship to an unlawful purpose before it is subject to forfeiture. *In re $53,263.00* (1987), 159 Ill. App. 3d 114, 118, 512 N.E.2d 740, 742.

■ In the case at bar, defendant was not charged with an offense involving the money, and no evidence was presented at trial that the money is the property of someone other than defendant. The money is not contraband *per se*, and the trial court erred in denying defendant's motion for release of property. (See *People v. Apartment No. 16 In The Two-Story Brick Apartment Building Located At 1334 Juniper, Rantoul* (1977), 52 Ill. App. 3d 912, 368 N.E.2d 787 (trial court erred in denying motion for return of $2,500 alleged unlawfully seized from apartment where no prosecution of apartment's lessee had occurred and no action for forfeiture of the money had been brought).) This court, therefore, remands this cause with directions to the trial court to return whatever money is due defendant.

For the foregoing reasons, defendant's conviction and sentence for attempted first-degree murder are affirmed, his convictions and sentences for the offenses of armed violence and aggravated battery are vacated, and the cause is remanded with directions. Defendant's conviction for first-degree murder is affirmed.

Affirmed in part; vacated in part; and remanded with directions.

CHAPMAN and HOWERTON, JJ., concur.